UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Plaintiff,

vs.

PAIN & INJURY REHABILITATION CLINIC,
DANIEL BELILOVSKY,
ALBERT KURZON and
RACHEL STADICK

       Defendants.
_____/

Civil Action No.
07-CV-15129

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON THE COMPLAINT and
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE COUNTER-COMPLAINT**

This matter is presently before the court on defendants' motion for summary judgment on the complaint [docket entry 53] and plaintiff's motion for partial summary judgment on the counter-complaint [docket entry 70]. The motions have been fully briefed. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide both motions without oral argument.

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") alleges in its complaint that defendant Pain & Injury Rehabilitation Clinic ("PIRC"), its incorporators/directors (defendants Belilovsky and Kurzon) and a chiropractor who is the "principle provider of service at PIRC" (defendant Stadick) "have purported to provide healthcare services to State Farm's insureds for alleged injuries arising out of the ownership, operation, maintenance or use of a motor vehicle . . . and collectively have presented billings to State Farm . . . a variety of

which have been paid by State Farm." Complaint ¶¶ 5-7. State Farm alleges that these billings are improper under Michigan's No-Fault Act for the following reasons: (1) PIRC "was established for illegal purposes in furtherance of fraudulent activities"; (2) "PIRC does not include the word 'chiropractic' in its name or in any of its advertising [as required by] Administrative Rule 338.12014 of the Michigan Board of Chiropractic"; (3) "alleged physical therapy services are being provided at PIRC, and billed for, without proper prescription or supervision by a physician or licensed physical therapist"; (4) "various devices including 'surface EMG's' and other alleged modalities of therapy which have no medical efficacy or scientific validity, are being administered by Rachel Stadick, D.C., . . . have not been approved by the Michigan Board of Chiropractic . . . [and] are not reasonable and necessary"; (5) "Daniel Belilovsky and Albert Kurzon are not licensed in any healthcare profession and have no foundation for their directorship of PIRC"; and (6) "Rachel Stadick, D.C., is a limited licensed healthcare professional and has exceeded the scope of her license." *Id.* ¶¶ 11, 13, 15, 16, 17, 18. Based on these allegations, State Farm seeks a declaration, in Count I of the complaint, that defendants' "services are not lawful, that the corporation is not properly incorporated, and not lawfully providing service, that the services provided are provided outside of the necessary licensure and Public Health Code requirements." *Id.* at 5.

In Counts II and III, State Farm asserts claims against defendants for fraud and unjust enrichment. These claims are based on the allegations that State Farm has paid $48,000 to defendants for services that were not compensable under the No-Fault Act because (1) defendant Stadick is not licensed to perform, or to authorize others to perform, physical therapy; (2) devices used in connection with physical therapy were not approved; and (3) defendants' services "were not properly identified as being chiropractic services." *Id.* ¶¶ 24, 25, 26, 28, 32, 33, 34.

In their counter-complaint, defendants assert claims against State Farm for account stated and unjust enrichment. Defendants allege they are owed $283,000 in unpaid billings.

*Defendants' Motion for Summary Judgment*

In their motion for summary judgment [docket entry 53], defendants argue "there is no genuine issue of material fact as to whether it provided lawful treatment which was compensable under the Michigan No-fault Act, that it did not commit fraud and was not unjustly enriched." Defs.' Mot. at 3. Essentially defendants argue that the treatment it has provided to State Farm's insureds has been necessary and proper and that summary judgment should be granted in their favor on all of State Farm's claims. In response, State Farm argues that summary judgment should not be granted due to the presence of many factual disputes, including whether defendants have been providing proper chiropractic treatment, whether physical therapy for which defendants have billed State Farm was properly prescribed and supervised, and whether defendants may charge for the use of surface EMGs.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

3

(emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson,* 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

In the present case, the court is unable to grant summary judgment for defendants on any of plaintiff's claims due to the presence of the many factual disputes identified in plaintiff's response brief. Whether plaintiff is entitled to the declaration it seeks in Count I (i.e., that defendants are not entitled under the no-fault act to be paid for the services at issue) will depend on the answer to several disputed issues. While defendants argue there is no genuine dispute as to whether the services it provided were reasonably necessary and compensable, plaintiff has submitted evidence showing that defendant Stadick (PIRC's only chiropractor) made the same findings in several different patients (e.g., spasms in all spinal muscles), gave them the same treatment, and noted little, if any, changes in the findings after months of treatment. Plaintiff legitimately suggests that such near identity of findings and treatment between patients over time gives rise to a triable issue as to whether the treatment was tailored to the individual patients, as it certainly must in order to be deemed reasonably necessary under the no-fault act.

Plaintiff has also demonstrated that a triable issue exists as to whether PIRC's billings for physical therapy are compensable under the no-fault act. As defendants concede, such therapy must be provided either by a physician or by a trained, unlicensed person who is properly supervised

by a physician. Defendants argue that Dr. Zongli Chang, M.D., provided the required supervision, as he was present at the clinic one day per week and could be contacted by the staff at other times. Yet in his affidavit, dated January 14, 2009, Dr. Chang avers he has worked for defendants "for about a year," i.e., since sometime after January 2008. As the present case concerns billings dating from December 2006, Dr. Chang could not have provided the required supervision during the relevant time period. Additional issues regarding whether Dr. Chang properly supervised the staff since January 2008 are noted in plaintiff's response brief.

There is also a triable issue as to whether defendants' use of a "surface EMG," or "sEMG," is a compensable service under the no-fault act. From the parties' briefs it is unclear whether this device "meets nationally recognized standards" or has been approved by the Michigan Board of Chiropractic, one of which must be answered affirmatively if the device is to be considered an authorized "analytical instrument" under state law. *See* Mich. Comp. Laws § 333.16423(2). Even assuming the sEMG is an analytical instrument chiropractors are *authorized* to use, however, this does not necessarily establish the instrument's *efficacy*. As the court noted in *Hofmann v. Auto Club Ins. Ass'n*, 211 Mich. App. 55, 88 (1995), services provided by a chiropractor using an instrument that has been approved by the Board of Chiropractic may still be challenged on the grounds the instrument lacks "efficacy." Plaintiff has submitted evidence, including a July 2000 report by the American Academy of Neurology, that casts serious doubt on the clinical value of sEMG's in diagnosing back pain. Clearly, this issue cannot be resolved on summary judgment.

The claims asserted in Counts II and III of the complaint, for fraud and unjust enrichment, likewise cannot be decided on summary judgment. Both of these claims involve the same factual disputes noted above. Whether defendants defrauded plaintiff, and whether defendants

were unjustly enriched at plaintiff's expense, depends on whether the billings submitted by defendants to plaintiff were payable under the no-fault act. This, in turn, depends among other things on whether the services defendants rendered to plaintiff's insureds were reasonably necessary and lawfully provided. None of these issues can be decided on the present record.

*Plaintiff's Motion for Partial Summary Judgment*

Plaintiff seeks summary judgment on Counts II and III of its complaint. For the reasons explained above, and for the additional reasons which follow, the court shall deny plaintiff's motion.

Plaintiff argues that it is entitled to summary judgment on its fraud claim (Count II) because some of the services provided by defendant Stadick (i.e., physical therapy and application of hot/cold packs) is outside the scope of the "practice of chiropractic" under state law; physical therapy was unlawfully provided because no physician's prescription was obtained beforehand and because the therapy was not properly supervised; defendants' failure to include the words "chiropractor" or "chiropractic," or the initials "D.C." in their business name, and their use of the word "rehabilitation," violates state law; defendants have engaged in unlawful "fee-splitting"; the owners of PIRC, defendants Belilovsky and Kurzon, "are nothing more than runners" in violation of state law; and part of defendants' billings are for their "marketing" expenses, which are not compensable under the no-fault act.

Plaintiff is not entitled to summary judgment on its fraud claim for a number of reasons. While defendants appear to concede that physical therapy and the application of hot/cold packs is outside the scope of chiropractic practice, they note that these do come within the definition

6

of "practice of physical therapy." *See* Mich. Comp. Laws § 333.17801(b). And while defendant Stadick is not a licensed physical therapist, she may nonetheless provide these services if she is properly trained and supervised. *See* Mich. Comp. Laws § 333.16215(1). As noted above, the issue of supervision – e.g., by Dr. Chang – is disputed.

Plaintiff's argument regarding the need for a prescription is not well supported. Plaintiff claims to have identified a small number of its insureds (summarized in plaintiff's Exhibit H) who in three cases did not obtain a prescription for physical therapy and in 16 other cases did obtain such a prescription but not until after (sometimes one day after) the physical therapy commenced. While this evidence may prevent defendants from obtaining reimbursement for physical therapy rendered before the date of the prescription, it certainly is not on its face proof of fraud.

The court also rejects plaintiff's argument that defendants' use of,[1] or failure to use, certain words in its business name or advertising materials is evidence supporting plaintiff's fraud claim. Even assuming defendants violated R338.12014 of the Michigan Board of Chiropractic by failing to include the word "chiropractic," plaintiff cites no authority for the proposition that this is evidence of fraud for tort liability purposes. While the cited administrative rule states that a violation of the rule is "deemed by the board to be fraudulent, false, deceptive, or misleading," the

---

[1] Plaintiff objects to the use of the word "rehabilitation" in PIRC's name and suggests this violates Mich. Comp. Laws § 333.17820(2), which allows only licensed physical therapists to use such words and phrases as "physical therapy" and "physical therapy technician." The statute has no apparent application in the present case, as the word "rehabilitation" is not mentioned in the statute.

elements of civil fraud are not met merely because such a rule is violated.[2] Assuming the rule applies to defendants, which defendants dispute, the violation of the rule is at most a technical violation which has no bearing on whether the services at issue in this case were lawfully rendered. *See Miller v. Allstate Ins. Co.*, 275 Mich. App. 649 (2007).

Plaintiff's remaining arguments concerning alleged fee-splitting, "runners," and marketing expenses, have no apparent relevance to the fraud claim. While these arguments, if proven, may go to the reasonableness of the billings, they do not show fraud.

For these reasons, the court concludes that plaintiff is not entitled so summary judgment on its fraud claim. Not only are the material facts genuinely disputed, but plaintiff has failed to show that defendants made any false representations or that they did so knowingly or recklessly.

Nor has plaintiff demonstrated its entitlement to summary judgment on its unjust enrichment claim (Count III). The elements of such a claim are "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993). Whether there

---

[2] As the Michigan Supreme Court stated in *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (*quoting Candler v. Heigho*, 208 Mich. 115, 121 (1919)),

> "The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

is any "inequity" in defendants' retention of the payments plaintiff has made cannot be decided on summary judgment, as the facts are disputed as to whether defendants provided plaintiff's insureds with "reasonably necessary products, services" at reasonable rates. Mich. Comp. Laws § 500.3107(1). Accordingly,

IT IS ORDERED that defendants' motion for summary judgment on the complaint [docket entry 53] is denied.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment on the counter-complaint [docket entry 70] is denied.

      s/Bernard A. Fridman_____
      BERNARD A. FRIEDMAN
      SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 8, 2009
     Detroit, Michigan

I hereby certify that a going of the foregoing document was served upon counsel of record on June 8, 2009, by electronic and/or ordinary mail.

      s/Carol Mullins_____
      Case Manager